ADELIA L. OTIS et al., Executors, etc., Appellants and Respondents, *v.* EUSTICE CONWAY, as Committee, etc., Appellant and Respondent.

The creditors of an insolvent lessee have no equitable claim to the profits issuing from leased land until after the landlord's claim for rent is satisfied.

Plaintiffs leased certain premises to S., who, thereafter, was adjudged a lunatic and a committee of his estate appointed. While proceedings were pending to compel the committee to pay rent, by agreement rent paid in by a sub-tenant of a portion of the premises was deposited to await the result of this action to determine who was entitled thereto. It appeared that the estate was insolvent. *Held*, that plaintiff was entitled to so much of the sum deposited as was paid for rent which accrued after default in payment of rent under the original lease.

*In re Otis* (101 N. Y. 580) distinguished.

While said proceeding was pending the parties entered into stipulations, under and in pursuance of which a part of the premises was leased to different parties. Each of the stipulations recited that the tenant named therein might occupy " for the benefit of whom it may concern," and that the assent of the parties thereto should in no respect alter their legal position toward each other; all but one provided that payment of rent by check should be deposited, and at the determination of the controversy paid " to the party held to be in possession of the said premises." It was finally adjudged in said proceedings that the lunatic himself was in possession. *Held*, that defendant, as committee, was entitled, under the stipulation, to the rent so paid in and deposited.

The other stipulation provided that the rent should be deposited " and finally paid over to the party ultimately entitled thereto." *Held*, that this referred to the final determination of the pending proceeding, and that the lunatic and his estate were entitled thereto.

(Argued March 7, 1889; decided March 19, 1889.)

CROSS-APPEALS from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 13, 1887, which reversed so much of a judgment entered upon a decision of the court on trial at Special Term as adjudged that defendant was entitled to the amount of various deposits with the American Loan and Trust Company of rent paid in under leases of portions of the premises described in the complaint, which deposits were made pursuant to stipulations between the parties, and which affirmed so much of said judgment as adjudged that defendant was entitled to all rents due from Jacob Godhelp to Oscar Strasburger, a lunatic, of whose estate defendant is the committee, under a sub-lease of a portion of the said premises.

This action was brought to determine the rights of the parties to said rents and deposits.

The material facts are stated in the opinion.

*John L. Cadwalader* for plaintiffs. The estate of Oscar Strasburger being insolvent, the plaintiffs are entitled, as against other creditors, to receive any rent earned by the demised premises until their rent is paid in full. (1 Story's Equity Jur. § 687; Taylor's Landlord and Tenant [4th ed.] § 659; *Goddard* v. *Keate,* 1 Vern. 87; *Riggs* v. *Whitney,*

Opinion of the Court, per BROWN, J.

15 Abb. Pr. 388; *Borell* v. *Newell,* 3 Daly, 233; *Peck* v. *Ingersoll,* 7 N. Y. 528; High on Receivers, § 470; Hunter on Landlord and Tenant [1886] 175, 411.) The evidence of the proposition to compromise admitted under objection and exception was entirely inadmissible. (1 Phillips on Ev. [Cow., Hill and Edw. notes, 5th Am. ed.], 350, note 124; Greenleaf on Ev. § 192; *Payne* v. *Forty-second St. R. Co.,* 40 N. Y. Super. Ct. 8; *Williams* v. *Thorp,* 8 Cow. 202.)

*Eustace Conway* for defendant in person. A court of equity will not now entertain any claim on the part of plaintiffs to the earnings or the property or to any preference over the other creditors. (Taylor on Landlord and Tenant, § 659.) If the stipulations mean anything except to prevent either party waiving his rights, they mean that the lunatic is entitled to the moneys, as he was the party held to be ultimately entitled thereto, and held to be in possession of the premises. (*In re Otis,* 101 N. Y. 585.)

BROWN, J. There is no dispute between the parties as to the facts which lie at the foundation of this controversy.

On January 1, 1881, the plaintiffs leased to Oscar Strasburger property in Broadway, in the city of New York, for the term of five years, at an annual rent payable on the first days of February, May, August and November in each year. In September, 1884, Strasburger was adjudged to be a lunatic and his son Albert was appointed his committee. Strasburger had occupied a part of the leased land for business purposes, and his son, after his appointment as committee, continued the occupation until November 20, 1884, at which time the business appears to have ceased. Pursuant to orders of the Supreme Court, the committee paid to the plaintiffs the rent due on November 1, 1884, and February 1, 1885. In February, 1885, Albert Strasburger was permitted by the Supreme Court to resign and the defendant was appointed as committee in his stead. Upon application by the plaintiff, the Special Term of the Supreme Court ordered the defendant to pay the rent fall-

ing due May 1, 1885, but such order was afterwards reversed by the general Term, and upon appeal to this court the order of the General Term was affirmed. (*In re Otis*, 101 N. Y. 580.) While this proceeding was pending, the parties entered into stipulations relating to the leasing of the property. Under these stipulations a part of the property was rented during the year 1885, and the fund thus accumulated forms one of the elements of the dispute between the parties.

It also appears that Strasburger, prior to the order adjudging him a lunatic, had leased a part of the property to one Jacob Godhelp, who occupied until January 1, 1886. Godhelp's rent for the year 1885 has not been paid to either party, but by agreement has been deposited with the American Loan and Trust Company to await the determination of this action, and this sum constitutes the second item of the plaintiff's claim.

We think that the plaintiff's claim to have the Godhelp rent paid to them is well founded. The lunatic's estate is insolvent, and will pay but a small percentage upon the debts conceded to exist against it. Technically, rent is something which a tenant renders out of the profits of the land which he enjoys. Equitably, it is a charge upon the estate, and the lessee, in good conscience, ought not to take the profits thereof without a due discharge of the rent. (*Goddard* v. *Keate*, 1 Vern. 87; 1 Story's Eq. Jur. § 687; Taylor's Landl. and Ten. 659; 2 Platt on Leases, § 185; *Riggs* v. *Whitney*, 15 Abb. Pr. 388.)

The creditors of an insolvent lessee can have no moral or equitable claim to the profits issuing from leased land, until after the landlord's claim for rent is satisfied. The defendant argues, however, that this question was settled adversely to the plaintiff, by the decision of this court in the *Matter of Otis* (101 N. Y. 580), and such was the opinion of the General Term. This question was not involved in the case cited. That proceeding arose on a petition of the plaintiffs, in which it was sought to make the rent a preferred debt against the lunatic's estate, on the ground that the committee was an equitable

assignee of the lease. No reference was made to the Godhelp rent, and the equitable right to have that applied to the payment of the landlord's debt was not presented to the court. This court held that the committee was not an assignee of the lease, but a mere custodian of the lunatic's estate, and that there was no equitable principle upon which a demand for rent takes preference of other debts, in the absence of a special equity growing out of the circumstances of a particular case. That language was applicable to the case then before the court, but has no application to the present appeal. Godhelp was not a party to the other proceeding, nor had his rent then been deposited in court, and the form of the proceeding and the absence of the necessary parties precluded the award of such equitable relief as is sought in this action.

The rent on the original lease to Strasburger having, however, been paid in full to February 1, 1885, the plaintiffs' right to the rent due from the sub-tenant must be limited to that which accrued subsequent to the last-named date.

As to the other fund the plaintiffs do not assert in the complaint any equitable claim, but base their rights thereto upon the stipulations. The tenants whose rents formed this fund were not sub-tenants of the original lessee, but went into possession under the consent of all parties contained in the stipulations, and, as to the rent accruing from their occupation, the parties have made their own agreement and created the law that must govern its distribution. All the stipulations recite the existence of differences between the parties as to the payment of the rent named in the lease to Strasburger, and that the premises are vacant, and each provides that the tenant named therein may occupy " for the benefit of whom it may concern," and that the assent to the agreement should in no respect alter the legal position of the parties toward each other. All except the first provide that payment of the rent shall be made by a certified check payable to the order of Strong and Cadwalder and Eustace Conway, committee, jointly, and that the same shall be deposited in the American Loan and Trust

Company until the final determination of the said controversy; " and that at the determination of the question at difference between the parties, both parties shall join in indorsing to the party *held to be in possession of the said premises.*" The parties thus fixed the time when and the event, which should determine the right to the possession of these checks. It is not disputed that the controversy thus named was the proceeding I have already referred to and which was finally decided in this court, and that the final determination therein was, that the lunatic himself was in possession of the demised premises.

This statement would seem to be sufficient to determine, that the defendant, as the committee of the lunatic, was entitled to have the checks indorsed by the plaintiffs and delivered to him. But the plaintiffs claim that the real meaning of the agreement was, that the party who was defeated in that proceeding should receive the rent paid by the tenants under the stipulation. We can find nothing in the case to justify such a construction. Certainly it could not have been claimed that the plaintiffs were in possession of the premises. They had refused to accept a surrender of the lease, and the various proceedings in this court and in the Supreme Court to obtain payment of the rent from the committee were based on the existence and validity of the original lease.

It is possible that it may have been the purpose of the parties that the plaintiffs were to receive these rents in case they were unsuccessful in the proceeding then pending and referred to in the stipulation, but they expressed no such purpose in the agreement they signed, and we must give effect to the plain language of those instruments. The point in dispute was, was the committee to be regarded as in possession as the equitable assignee of the lease? If he was, then he would be compelled to pay plaintiff the rent reserved in the original lease, and the rents covered by the stipulations would be his. But as this court held the lunatic was in possession, by the plain language of the agreement, the rents are his, and the checks must be indorsed by plaintiffs and delivered to the

committee.    The first stipulation differs from the other in pro-
viding that the rent should be deposited "and finally paid
over to the party ultimately entitled thereto."    This, we think,
referred to the final determination in the proceeding then
pending.    It had no reference to any equitable claim that
the landlord might afterwards assert to the rents from sub-
tenants, but provided for payment to the party who ultimately
should be decided to be legally entitled thereto.    The lunatic is
such party, and his estate is entitled to the rent covered by
these stipulations.

Our conclusion being different from both of the courts
below, the judgment of the General and Special Terms should
be reversed and a new trial granted, without costs to either
party against the other in this court.

All concur.

Judgments reversed.