THE HAYDEN COMPANY, Respondent, *v.* CHARLES F. KEHOE, Appellant.

Second Department, April 27, 1917.

Landlord and tenant — action for rent — constructive eviction — failure of landlord to run elevator as required by lease — evidence raising question for jury.

Action by a landlord to recover rent, the defense being a constructive eviction by reason of the failure of the landlord properly to operate an elevator in the building as required by the lease. It appeared that the defendant, a tailor making expensive gowns for ladies, occupied rooms on the fourth and sixth floors of the building and owing to the fact that the elevator was repeatedly out of order and failed to run he lost certain wealthy customers who refused to endure the annoyance of mounting the stairway. Evidence examined, and *held*, that it was error to direct a verdict for the plaintiff because it was for the jury to say whether the evidence given by the defendant, which was contradicted by that of the plaintiff, constituted a constructive eviction.

The plaintiff was entitled to a direction of a verdict for the rent for the quarter during which the defendant removed from the premises, but not for the rent thereafter accruing.

APPEAL by the defendant, Charles F. Kehoe, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 9th day of May, 1916, upon the verdict of a jury rendered by direction of the court.

The action is brought to recover unpaid rent for the fourth and part of the sixth floors of a building leased and controlled by the plaintiff, accruing between December 1, 1914, and December 1, 1915. The defendant moved from the premises and abandoned the property about the 1st of January, 1915, and in his answer pleads a constructive eviction. He also pleads the facts constituting the alleged eviction as a counterclaim, and demands an affirmative judgment for damages. At the close of the evidence the plaintiff first moved to strike out the counterclaim, on the ground that there was no evidence of any damages. The court granted the motion and the defendant excepted. Plaintiff then moved for the direction of a verdict upon the ground that the defendant's evidence did not estab-

lish an eviction. This motion was also granted, the learned court stating that there was no evidence to be presented to the jury on the question of a constructive eviction. The defendant asked to have that question and his evidence under his alleged counterclaim submitted to the jury that they might pass upon the facts. This request the court refused, and a verdict was directed for the plaintiff for the full amount claimed. From the judgment accordingly entered this appeal is taken.

*Abraham P. Wilkes* [*Henry Kuntz* with him on the brief], for the appellant.

*Ernest P. Hoes* [*Frank L. Hall* with him on the brief], for the respondent.

RICH, J.:

The lease, dated April 6, 1911, expiring May 1, 1916, expressly obligates the plaintiff to "supply, at all reasonable times, * * * between the hours of eight in the morning and seven in the evening of each day during said term, except Sundays and legal holidays, elevator service, but shall not be liable for any failure to do so occasioned by accident or cause beyond its control."

The defendant carried on the business of a ladies' tailor, making high-grade suits, gowns and other articles of ladies' clothing to order and measurement, employing in his business from sixty-five to seventy workmen. His fitting and show rooms were on the fourth floor, and his work rooms on the sixth floor of the leased building. His average business in each of the years 1912 and 1913 was $130,000, which in 1914 dropped to $70,000. He had a daily average of forty fitting appointments for suits and gowns during his busy season each year (which commenced on September first and ended in the early part of May following), which were sold from $100 to $500 each — none less than $100. His profits netted fifteen per cent of his total business. The elevator was used for both freight and passengers, the defendant's customers being carried thereon from the ground floor to his show, measuring and fitting rooms, and returned therefrom to the ground floor. It

was part of the demised premises and indispensable to the proper conduct of defendant's business and his beneficial enjoyment of the premises.

The evidence given by defendant himself and several witnesses, some of whom were apparently disinterested and in some details corroborated by witnesses called by the plaintiff, is that, commencing shortly after the lease was entered into, the elevator went bad, was difficult to operate, and at times could not be operated; that he repeatedly complained to the plaintiff, and each time was assured and promised that the defects and conditions complained of would be remedied and the elevator placed in such repair that the troubles would not again occur; that some repairs were made from time to time and defective conditions thereby temporarily, but not permanently, removed and remedied; that the conditions complained of gradually increased and grew worse until, in 1914, the elevator was out of repair and unable to be operated on an average of from two to three days a week; that many of his customers would not walk up the several flights of stairs leading to his rooms, and when they called to be measured or fitted and found the elevator not running they went away, and he lost their patronage; that repeatedly in 1914 he complained to the plaintiff's president, informing him that " this elevator is putting me out of business, and if it is not fixed we are practically going out of business because my sales are falling off every day. You realize I have a high-class clientele, and they will not walk up stairs. The people are going away every day, and we are losing an enormous amount of business. And on one occasion he said, 'Well, we are doing the best we can, we are fixing it up.' I said, 'Mr. Hayden, you are unable to patch it up, you ought to put in a new elevator. Why don't you do it ? Do you realize the loss I am suffering from this elevator ?'" That on each of these occasions in the spring and early fall plaintiff's president assured and promised defendant that repairs would be made and conditions remedied, but in the late fall the president informed defendant that he did not know whether plaintiff's lease of the building, which had then expired or was about to expire, would be renewed or not, and he could not be expected to put in a new elevator for a new

tenant, to which the defendant answered, "that don't do me any good. That might be from your standing, but not mine," and defendant was finally informed that the plaintiff would not spend its money to properly repair the elevator, and replied, "It is practically driving me out of business, and I will have to get out."

These conditions, complaints and conversations are denied by plaintiff's witnesses, and there is some testimony which, it is contended, shows that defendant's abandonment of the premises was caused by the sale of his business, and not by elevator conditions; but the questions arising from these controverted facts could not be determined by the court; they were for the jury. If on any construction of the facts the jury would have been warranted in rendering their verdict for the defendant, or sustaining his contention in whole or in part, the judgment must be reversed. The language of the court in *Lawrence* v. *Mycenian Marble Co.* (1 Misc. Rep. 105, 106), a similar case in which the jury found for the defendant, is so peculiarly applicable that I quote it: "Appellant's main reliance for reversal of the judgment is upon the contention that the evidence was insufficient to support an inference of eviction. But we are to assume the facts involved in the verdict; and they are, that the plaintiff retained charge and control of the elevator; that its use by defendant was part and parcel of the estate demised, and indispensable to its beneficial enjoyment; that of such enjoyment the defendant was deprived by plaintiff's persistent mismanagement of the elevator and neglect to repair it; and that because he was so denied the beneficial enjoyment of the premises, the defendant abandoned them before the rent in suit fell due. That upon proof of these circumstances the jury were warranted in finding the fact of eviction is hardly a disputable proposition in the jurisprudence of New York." A number of authorities are cited sustaining this rule of law, which has continued to be and is the law of this State at the present time.

The plaintiff was entitled to the direction of a verdict for the rent of the period during which defendant removed from the demised premises, but in directing a verdict for the rent there-

after accruing the learned trial court was in error, and the defendant was entitled to go to the jury upon his counterclaim.

The judgment should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., MILLS, PUTNAM and BLACKMAR, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.