ADELAIDE R. READ, FISHER A. BAKER and CHARLES A. PEABODY, as Executors of and Trustees under the Last Will and Testament of JOHN DOWNEY, Deceased, Respondents, v. BENO LEVY and SAMUEL LEVY, Individually and as Partners Doing Business under the Firm Name of BENO LEVY & COMPANY, Appellants.

(Supreme Court, Appellate Term, First Department, November, 1917.)

Verdict — in action for rent — lease — evidence — when verdict should not be set aside.

Where, in an action for rent of the fourth loft of a building, the testimony of defendants tended to establish their defense of constructive eviction because of their inability to ship goods owing to the suspension of elevator service provided for by the lease, and that they acted with reasonable promptness in leaving the premises, a verdict in their favor should not have been set aside; and an order granting plaintiffs' motion to set aside the verdict will be reversed and the verdict reinstated.

APPEAL by defendants from an order of the Municipal Court of the city of New York, borough of Manhattan, ninth district, granting plaintiffs' motion to set aside a verdict rendered in favor of defendants.

Jacob Manheim, for appellants.

Montgomery & Peabody (W. Cleveland Runyon, of counsel), for respondents.

PHILBIN, J.   The action was brought for rent for the months of July, 1915, to February, 1916, on a written lease of the fourth loft of a building in Houston street, in the borough of Manhattan. The lease was for one year from the 1st of February, 1915.

The answer of the defendants admits that the rent sued for has not been paid. It sets forth, as a sepa-

rate defense, that the elevator in said premises was appurtenant to the latter and inseparably incident thereto for the purpose of access and egress; that without the use of the elevator, as was well known to the plaintiffs when they leased the premises, the defendants could not have the beneficial use of the premises; that the elevator was indispensably necessary for the transaction of defendants' business which consisted of the manufacture and sale of ladies' hats; that the elevator was not maintained in repair and condition so that it could be used by defendants, their employees and customers; that defendants well knew the condition of the elevator from the 1st of February, 1915, until the defendants vacated the premises on the 15th of June, 1915; that during that period it was out of repair, not in running order or operated by plaintiffs; and that plaintiffs repeatedly promised to make repairs, but did not do so. It is further alleged that for the above reasons defendants were compelled and did remove from the premises on the 15th of June, 1915. The defendants make no counterclaim.

The clause in the lease relating to the elevator reads as follows: "And the parties of the second part are to have steam for heating said fourth loft and the use in common with the other tenants of the elevator provided for the building; the parties of the first part to use due diligence in furnishing said steam for heating the premises hereby demised and power to operate the elevator during the usual business hours, except Sundays and holidays, and one-half hour during the noon hour, but do not guarantee an uninterrupted supply."

The jury brought in a verdict for the defendants, but, on motion of the plaintiffs, it was set aside. The court assigned no reasons for its decision. It is undisputed that the elevator service was suspended at times for repairs.

The defendants were the only witnesses produced on their behalf. They testified that the elevator stopped running at times for a day or two days during February, 1915, and later it stopped running for ten days; that they complained to the man employed by the plaintiffs in the building, and who operated the elevator, that their customers did not come up to their loft; that he told them to speak to one Walker, the real estate agent having charge of the property, and defendants did so. They told Walker that they could not do any business, and he said he would try and fix the elevator. He later did so, the work taking two or three days. About a week later the elevator again stopped and defendants protested to Walker. It was put in order, but operated for only four or five days, when it again stopped and remained idle for a week. This last occasion was in May or June. In April it was out of order for about two weeks. Before defendants moved out, they told Walker they could not do any business; that they could not stay any longer. They removed on June 15, 1915, but paid the rent for that month, which became payable on the first of the month. One of the defendants further testified, without objection, that the man employed in the building said that if the estate would spend a little money on the elevator it would be all right. It was the early part of May when it stopped for ten days. The conditions got worse from February until defendants moved out. It was further stated by defendants that they were unable to ship goods because of suspension of the elevator service.

On behalf of the plaintiffs, Walker was called as a witness. He admitted that repairs had been necessary, but said they were promptly made. He received no complaints from the month of February to June. The elevator was not stopped two weeks in May, but it

was stopped only on three occasions. The elevator was operated by a concern known as G. F. Hall Company under a contract with the plaintiffs. One Mac-Loud, an employee of the company, was the only other witness called by the plaintiffs. He had the inspection of the elevator and visited it daily. He stated it had been shut down only on one entire day and for two half days.

If the testimony of the defendants was true, they establish their defense of constructive eviction, and it was for the jury to determine whether it was true. *Lawrence* v. *Mycenian Marble Co.,* 1 Misc. Rep. 105; *Hayden Co.* v. *Kehoe,* 177 App. Div. 734. According to their testimony, the defendants acted with reasonable promptness in leaving the premises. *Seaboard Realty Co.* v. *Fuller,* 33 Misc. Rep. 109. They left on June 15, 1915, and the elevator had stopped for ten days in the preceding month according to their statements. We think that a question of fact for the jury was presented and, it having resolved it in favor of the defendants, the verdict should not have been disturbed.

Order reversed, with thirty dollars costs, and verdict reinstated, with costs.

ORDWAY, J., concurs.

BIJUR, J. (concurring). I concur on the ground that as the order setting aside the verdict does not specify the grounds upon which it is granted and no opinion was delivered (See Gen. Rules of Practice, rule 3), rule 31 of the General Rules of Practice compels the inference that it was granted " on the exceptions taken during the trial," and no questions of law appear in the record to warrant any disturbance of the judgment.

Order reversed, with costs.