## CENTRAL MANHATTAN PROPERTIES, Inc., et al. v. D. A. SCHULTE, Inc., OF NEW YORK.

### No. 335.

Circuit Court of Apepals, Second Circuit.
June 28, 1937.

Coughlan & Russell, of New York City (George Coughlan, of New York City, of counsel), for appellant Central Manhattan Properties, Inc.

William M. Chadbourne, of New York City (Clinton De Witt Van Siclen, of New York City, of counsel), for appellant Central Manhattan Properties Bondholders' Protective Committee.

Jerome Eisner and Ernst, Gale, Bernays & Falk, all of New York City (Henry I. Fillman, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in bankruptcy, expunging a claim against a debtor in reörganization. The claimant had let six separate parcels of land in New York to the debtor, the rent in all cases being payable monthly in advance; the debtor had sublet most of these premises to others upon leases like its own; the sub-rents also payable monthly in advance. On June 1, 1936, it defaulted upon the payment of its rent for that month, but it collected some of the sub-rents before, and some after, June third, the day when it filed a voluntary petition for reörganization. The judge approved this petition, kept the debtor in possession and enjoined all suits against it. The lessor made no effort during the month to be relieved of this injunction, but now claims the sub-rents collected, the debtor not having affirmed or rejected the lease. It asserts that it had an equitable lien upon them under Otis v. Conway, 114 N.Y. 13, 20 N.E. 628, and if not, that it was entitled

*to* them because the court at the debtor's request had taken away its remedies. The judge ruled against it on both points and expunged the claim.

■ The power of a trustee in bankruptcy, and of a debtor in reörganization, to withhold leased property pending deliberation, is too well settled for debate. The often considered language in subdivision (b) (10) of section 77B (11 U.S.C.A. § 207(b) (10) presupposes it, and is built upon it, though the debtor must decide within a reasonable time, and the lessor can force it to do so, if it does not. The period of its indecision, short or long, is necessarily at the expense of the lessor, and for the sole benefit of the debtor, which in effect is allowed to play fast and loose with the property, while its affairs are being straightened out. The resulting equities at bar may best be viewed by considering the situation in case the debtor affirms, and in case it rejects, a lease. If it affirms, it will have to pay the rent due on June 1, 1936, for the debt is secured by the right to reënter, a right given in New York whether expressly reserved or not (section 1410, subdivision 2, Civil Practice Act). Such a debt could not be discharged by the plan without the creditor's consent, or something of equal value as the security. Indeed, the very affirmance would itself be an assent to all the conditions of the term. The June rent is not, of course, the same as the June sub-rents, and an over-payment may result, if the debtor be directed to turn these over at once; but the record does not suggest that it will, and if it does, the surplus can be credited upon future rent.

■■ If on the other hand the debtor rejects a lease, it could keep the June sub-rents only on the theory that, being choses in action due before petition filed, they became its property once and for all, regardless of anything that might overtake the sub-lessees through its own default. We need not go into the question whether it could have collected any sub-rents not collected, or have held any that it had collected, if the lessor had evicted it and its sub-lessees along with it. If it could not, its right to the sub-rents depended absolutely upon the court's keeping off the lessor. That question depends upon the covenant of quiet enjoyment in the sub-leases, In re United Cigar Stores (Ex parte Cloudy), 82 F.(2d) 247 (C.C.A. 2). Giles v. Comstock, 4 N.Y. 270, 53 Am. Dec. 374; Hayden Co. v. Kehoe, 177 App.

Div. 734, 164 N.Y.S. 686; and as they are not in the record, we will assume that there were none such. But the debtor gained in another way by holding off the lessor, quite aside from any power to collect the sub-rents; that gain was measured by the value of the option which it secured through the injunction, the same kind of right which in stock markets is bought and sold as a "call." Since the loss imposed upon the lessor is too obvious for debate, it follows that the debtor has been unjustly enriched at the expense of the lessor. It would be contrary to every principle of equity if the property so withheld should not be subjected to a constructive trust in favor of the lessee. Section 160, Comment. c & d., Restatement of Unjust Enrichment (Proposed Final Draft March 5, 1936). It is to be observed, however, that the trust res is not the sub-rents themselves, on which by hypothesis the lessor has no claim, but the premises. For this reason it might theoretically have been possible to charge the debtor with their value—though that is not the law—and such a liability would be for damages. Quite independent and in addition to it is the duty of all trustees to restore any gain or profit they may have made out of the res; that is fundamental to the relation in all its forms. The sub-rents, though they were payable in advance, were not on that account any the less a profit derived by the debtor from its retention of the premises during the month of June; that profit belongs to the lessor at whose expense it was procured; it is recoverable in equity.

■ Reisenwebers Inc. v. Irving Trust Co., 69 F.(2d) 513 (C.C.A.2), did indeed involve the same situation; the lessor had been kept out of possession pending the decision of a trustee in bankruptcy; and we held that he was liable for the use and occupation of only so much of the premises as he physically occupied, and that collecting rents from sub-lessees was not the equivalent of occupation. That ruling was certainly correct; collecting the sub-rents does not make a trustee or a debtor liable for the use and occupation of premises which he or it has never occupied. The liability then before us was, as we have just said, for damages, and was not measured by anything which the trustee had received; the lessor was not asking that the estate should account for profits. We did not therefore answer the question now before us, though we said that the lessor had a lien on the sub-rents. To the same effect are Dickson v. Irving

Trust Co., 69 F.(2d) 517 (C.C.A.2), Meehan v. King, 54 F.(2d) 761 (C.C.A.1), and Irving Trust Co. v. Densmore, 66 F.(2d) 21 (C.C.A.9). In the last of these we understand Judge Mack's views to be in accord with ours, and perhaps his answer to the claim there would have been good here, if the period now at issue had not been the first month of the sequestration. It does not however seem to us that a lessor is bound to act within a month to preserve its rights.

The debtor insists that even if the lessor has such a cause of suit, the recovery should be limited to the period after it could first have evicted the debtor and its sub-lessees, and reclaimed possession. In Re Manhattan Piggly-Wiggly Corp. (D.C.) 296 F. 944, I held that the bankrupt and its receiver are entitled to possession gratis, until the lessor at least asks the court to be relieved of the stay, and that if he does not, he cannot recover for use and occupation; he has not chosen to avail himself of his security—the right of reëntry. But this court overruled that decision in Oscar Heineman Corp. v. Nat Levy & Co., 6 F.(2d) 970, 43 A.L.R. 727, where we held that a chancery receiver was liable for use and occupation from the moment of his entry, regardless of the lessor's' inaction. See, also, In re Sherwoods, 210 F. 754, Ann.Cas.1916A, 940 (C.C.A.2). An explanation may be that the trustee or receiver, having invoked the help of a court of equity, will not be heard to say that, if he had not enjoined the lessor, he could have obstructed his lawful reëntry for a season; and that having finally decided to reject the lease, he may resume his former standing. Rather, he subjects the adjustment of his relations with the lessor to an equitable disposition throughout, which requires that they shall be fixed as though he had rejected the lease when he got the stay. If he had then known his mind, the court to which he addressed himself would have compelled him to surrender the premises without putting the lessor to his action; equity regards as done what ought to have been done; the rejection "relates back". This reasoning applies as well to a constructive trust of the premises, as to a claim for use and occupation; and we hold that the lessor was entitled to 14/15ths of the sub-rents; that is, to the last 28 days of June, 1936.

We also hold that it has not proved any lien upon the sub-rents under the doctrine of Otis v. Conway, supra, 114 N.Y. 13, 20 N.E. 628. We are not indeed convinced beyond doubt that that doctrine is law in New York to-day; but, however, that may be, concededly it depends upon the insolvency of the lessee, and insolvency can there only mean insufficiency of assets. The transaction is not commercial or financial, and a lessor has no conceivable interest in whether the lessee fails to pay in due course, provided a judgment against him be good. No one needs an "equitable lien" unless his debtor's assets will not go round. Although the point has never been decided, we have therefore no doubt that, if the doctrine of Otis v. Conway, supra, 114 N.Y. 13, 20 N.E. 628, is law, it means this kind of insolvency. There is no evidence in this record on that issue, and that would alone be enough; but we have examined the petition for reörganization on file in the district court, and it alleges that though the debtor could not pay its debts as they matured, it was abundantly solvent. On such a record the lessor has no lien; its claim must be confined to fourteen-fifteenths of the sub-rents.

Order reversed; claim allowed as aforesaid.