## In re BROMEL–KNAPP CORP.
### No. 32294.

United States District Court
E. D. Michigan, S. D.
Aug. 12, 1952.

John T. Higgins, Wurzer, Higgins & Starrs, Detroit, Mich., for claimant.

Charles A. Dean, Joslyn, Joslyn & Joslyn, Detroit, Mich., for Trustee.

LEVIN, District Judge.

The court has before it a petition for review from a decision of Referee in Bankruptcy Katcher.

The Referee found that an undeserved preference was given by the bankrupt to the petitioner Buhl Land Company within the statutory four-month period prior to the filing, on September 29, 1949, of a voluntary petition in bankruptcy and ordered that the money so paid to petitioner be returned to the trustee in bankruptcy for the general benefit of the bankrupt's creditors.

The petitioner's claim against the bankrupt was for unpaid rent. On September 6, 1949, an assignment of accounts receivable was made by the bankrupt company to petitioner, in an amount insufficient to cover both the past due rent and the current rent for the month of September. The petitioner claims that this payment was intended to apply first to the current rent, whereas the Referee held that it was intended to apply primarily to unpaid rent for the months of May and June of the same year and to that extent constituted a preference to the petitioner. The testimony showed that the petitioner had been pressing the bankrupt corporation for payment of the May and June rent. An officer of the petitioning company pointed out that payments for rent were seldom received at the beginning of a month and that the bankrupt company usually paid its rent around the twentieth day of each month.

Claim No. 36 filed for the petitioner on November 7, 1949, claims a priority for the unpaid rent for the months of August and September of 1949. An officer of the bankrupt corporation testified that petitioner's representative was warned at the time that the accounts were assigned that there might be a petition in bankruptcy and that the assignment might, in that case, be considered as a preference. The only evidence contrary to the Referee's finding was introduced through the testimony of an officer of the petitioning company. In view of all the evidence it cannot be said that the finding is clearly erroneous.

With respect to the applicable law it is claimed that the Referee should have found that rent is entitled to priority in Michigan. The money in question was paid to petitioner as rent. The problem is whether or not rent is entitled to priority under the provision of Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, which provides:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (5) * * * rent owing to a landlord who is entitled to priority by applicable State law * * *."

No statute of the State of Michigan gives such a priority to landlords. The petitioner relies, however, on a judicial decision of the Michigan Supreme Court, Kresge Co. v. Twelve Seventy-Five Woodward Ave. Corp., 270 Mich. 218, 258 N.W. 252, as creating such "applicable State law". Although the Referee expressed some doubt as to whether the common law of a state could create the exception re-

ferred to by the Bankruptcy Act, he rejected the petitioner's contention on the basis that no priority attaches to rent in the State of Michigan.

Although the law of many states, either by statute or common law, recognizes a priority for landlords for the payment of rent, the Kresge case is the only Michigan authority that petitioner has been able to cite to support its position that Michigan law creates such a priority. A reading of the Kresge decision in the light of the facts presented to the court and the development of the law on the subject shows that there is no reason to believe that the Michigan court intended to establish a general priority for rental claims or to give landlords a lien for the payment of rent in every situation.

That case dealt with the special problem presented when land has been sublet and the original lessee has become insolvent. The court held, in accord with the common law rule as established in the United States, that in such a situation the landlord is possessed of an equitable lien on rents paid by the sublessee so that such rents could not be collected by the lessee and applied for the benefit of his creditors generally.

The reason for the rule shows clearly that this decision cannot be viewed as creating a general priority for rent. At common law the landlord had no action against a sublessee because there is no privity of contract. In some situations in which the equities were particularly appealing, the courts of chancery stepped in to remedy this situation. A remedy was created to solve the problem raised when the lessee was insolvent; an equitable lien on rental payments made by the sublessee was given the landlord for the period after the lessee's insolvency and to the extent that the lessee had actually defaulted in his payments to the landlord.

The basis of this exception to the general rule is found in the persuasion of the equity courts as expressed by the New York Court in Otis v. Conway, 114 N.Y. 13, 20 N.E. 628, relied on by the Michigan Court in the Kresge case, that rent "is a charge upon the estate, and the lessee, in good conscience, ought not to take the profits there-

of without a due discharge of the rent. * * * The creditors of an insolvent lessee can have no moral or equitable claim to the profits issuing from leased land until after the landlord's claim for rent is satisfied." 114 N.Y. at page 16, 20 N.E. at page 629.

In the absence of anything more explicit than the Kresge case it must be held that the Michigan law does not create a general priority for the payment of rent.

The Referee's decision is affirmed.