In re **KENTWOOD PHARMACY, L.L.C.,** Debtor.

**The Huntington National Bank,** Plaintiff,

v.

**Thomas A. Bruinsma, Chapter 7 Trustee,** Defendant/Cross–Plaintiff,

and

**Tulip Investments, LLC,** Defendant/Cross–Defendant.

Bankruptcy No. 10–13397.
Adversary No. 11–80238.

United States Bankruptcy Court, W.D. Michigan.

July 17, 2012.

Nicole L. Mazzocco, Esq., and Robert H. Skilton, Esq., Grand Rapids, MI, attorneys for The Huntington National Bank.

Donald R. Visser, Esq., Kentwood, MI, attorney for Tulip Investments, LLC.

Steven L. Rayman, Esq., Kalamazoo, MI, attorney for Thomas A. Bruinsma, Chapter 7 Trustee.

## OPINION REGARDING VALIDITY OF ASSERTED LANDLORD'S LIEN

JAMES D. GREGG, Chief Judge.

### I. JURISDICTION

This court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. This case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); Local Rule 83.2(a) (W.D.Mich.). This adversary proceeding is a statutory core proceeding because the plaintiff seeks to determine the validity, extent, or priority of a lien. 28 U.S.C. § 157(b)(2)(K).

### II. ISSUES

Does a common law landlord's lien exist in Michigan? Is The Huntington National Bank entitled to a declaratory judgment that its security interest in the debtor's assets has priority over Tulip Investments, LLC's asserted common law landlord's lien? Is Tulip Investments, LLC entitled to a declaratory judgment that its asserted common law landlord's lien has priority over The Huntington National Bank's security interest? Should this court impose sanctions on its own initiative?

### III. PROCEDURAL HISTORY AND ASSERTED FACTS

On November 10, 2010, Kentwood Pharmacy, L.L.C. ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Thomas A. Bruinsma

("Trustee") was appointed as trustee of the Debtor's estate.

For a number of years prior to the petition date, The Huntington National Bank ("Bank") and the Debtor had a credit relationship. As of the petition date, the Debtor owed the Bank approximately $3,419,072.95 pursuant to numerous loan documents. The Debtor is also the guarantor of a debt owed to the Bank by Mulder Properties, LLC ("Mulder"). As of the petition date, Mulder owed the Bank approximately $621,511.42. These debts are secured by a lien on substantially all of the Debtor's assets. The Bank properly perfected its security interest in the Debtor's assets, the "collateral," by filing a Uniform Commercial Code ("UCC") Financing Statement on July 18, 2003, and a timely continuation of that statement on June 26, 2008. On June 2, 2011, the Bank filed a timely proof of claim in the Debtor's bankruptcy case. (Claim No. 76.) The Trustee does not contest the validity and perfection of the Bank's lien which has attached to substantially all of the Debtor's assets.

Tulip Investments, LLC ("Tulip" or the "Landlord") leased real property to the Debtor pursuant to a lease dated December 4, 2007. The Landlord filed a proof of claim in the Debtor's bankruptcy case on June 13, 2011, asserting a claim in the amount of $1,492,816.34 for breach of lease. (Claim No. 78.) The proof of claim indicates that $338,758.88 of the Landlord's claim is secured by virtue of a landlord's lien. The Landlord asserts that its written lease with the Debtor intentionally omitted a consensual landlord's lien provision. It alleges, however, that it holds a possessory landlord's lien on the Debtor's property located at the leased premises under Michigan common law.

On November 23, 2010, the Trustee moved to sell the Debtor's assets free and clear of all liens pursuant to 11 U.S.C. § 363.[1] At a hearing on November 29, 2010, this court considered the sale motion and authorized the Trustee to sell substantially all of the Debtor's assets. A court order approving the sale was entered on December 1, 2010. (Dkt. 59.) On April 4, 2011, the Trustee filed a Motion to Authorize Distribution of Sale Proceeds seeking authority to distribute the sale proceeds and postpetition receivables collections, less an agreed upon 8% surcharge, to the Bank. (Dkt. 136.) The Landlord objected to the Trustee's motion based upon its asserted possessory landlord's lien. (Dkt. 170.)

A hearing on the Trustee's motion to distribute the sale proceeds occurred on May 10, 2011. Following argument of the parties, this court ordered the Trustee to distribute all of the sale proceeds and receivables collections, subject to the 8% surcharge, to the Bank with $350,000 of the sale proceeds escrowed until the validity of the landlord's lien was determined. As a result of the prior court order, and the escrow of the remaining sale proceeds, a determination was required: Does the Bank or Tulip get the remaining proceeds?

On May 18, 2011, the Bank filed this adversary proceeding. The Bank's complaint seeks a declaratory judgment that no common law landlord's lien exists under Michigan law. Further, the complaint requests that this court enter a declaratory judgment that the Bank's lien has priority over any interest in the sale proceeds asserted by the Landlord. Therefore, the Bank contends it is entitled to the remaining sale proceeds, less any unpaid surcharge to be retained by the Trustee.

---

1. The Bankruptcy Code is set forth in 11 U.S.C. §§ 101–1532 inclusive. The specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ——."

On June 6, 2011, the Trustee filed his Answer and a Cross–Claim against the Landlord. Assuming a landlord's lien exists, the cross-claim seeks to avoid the Landlord's asserted lien as a preference under § 547(b), as a statutory lien under § 545, or under the Trustee's § 544 strong-arm powers. If Tulip does not hold a valid lien, the Trustee's cross-claim will be unnecessary.

On August 17, 2011, the Bank filed its motion for judgment on the pleadings. The Bank's position is very simple and straightforward—there is no common law landlord's lien under Michigan law. Therefore, according to the Bank, the Landlord has no secured claim against the Debtor's assets, and that alone justifies judgment on the pleadings.

On September 2, 2011, the Landlord surprisingly filed a cross motion for judgment on the pleadings. In contrast to the simple and straightforward position of the Bank, politely stated, the Landlord's position is opaque. The Landlord asserts that because in *Shurlow v. Bonthuis*, 456 Mich. 730, 576 N.W.2d 159 (1998), the Michigan Supreme Court declined to determine whether the court had earlier recognized a common law landlord's lien, *see S.S. Kresge Co. v. Twelve Seventy–Five Woodward Ave. Corp.*, 270 Mich. 218, 258 N.W. 252 (1935), the only "legitimate conclusion" is that a common law landlord's lien exists.

On December 29, 2011, the Bank responded to the Landlord's cross motion reiterating its position that no such lien exists. However, assuming for the sake of argument that such a lien exists, the Bank properly questions whether judgment on the pleadings in favor of the Landlord is legally correct because a myriad of factual and legal issues exist. For example: How is a landlord's lien created? Did the Landlord take the necessary steps to create such a lien? What property is covered?

What is the priority of any competing liens? Do the Trustee's various avoidance cross-claims prevent the Landlord from obtaining the sale proceeds?

On March 6, 2012, argument took place regarding the parties' cross motions for judgment on the pleadings. At the conclusion of the hearing, the court directed the parties to file supplemental legal memoranda. The court took the cross motions under advisement.

## IV. DISCUSSION

### A. Standard for Judgment on the Pleadings.

Federal Rule of Civil Procedure 12(c), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(c), permits a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. The standard to grant a judgment on the pleadings is the same as that for a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6). *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 389 (6th Cir.2007).

" 'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.' " *Tucker v. Middleburg–Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir.2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007)). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.' " *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991)).

Applying this standard, the Landlord's motion must be denied. Even assuming that a landlord's lien may exist, there are simply too many factual and legal issues to be determined, including the amount of the debt, the amount of the asserted lien, coverage of any such lien, and the priorities between the lien holders. Whether application of the standard for judgments on the pleadings will permit this court to grant the Bank's motion will depend upon the court's analysis of whether a common law landlord's lien exists in Michigan.

### B. Does a Common Law Landlord's Lien Exist in Michigan?

■ The Bank primarily relies upon two authorities to support its conclusion that Michigan does not recognize a common law landlord's lien. *In re Bromel–Knapp*, 106 F.Supp. 519, 521 (E.D.Mich.1952) ("Michigan law does not create a general priority for the payment of rent" or "give landlords a lien for the payment of rent in every situation."); John G. Cameron, *Michigan Real Property Law: Principles & Commentary* ("Cameron"), § 20.67, 1161 (3d ed. 2005) ("[N]o Michigan cases have been discovered that consider whether a common-law landlord's lien for unpaid rent exists in Michigan.").

The Landlord principally relies upon two old cases (one which the court considers to be "ancient") to support its argument. *S.S. Kresge Co. v. Twelve Seventy–Five Woodward Ave. Corp.*, 270 Mich. 218, 258 N.W. 252 (1935); *Treakle v. Coke*, 1 Vern. 165; 23 Eng. Rep. 389 (1683).

How correct is the Landlord's assertion that the "only legitimate conclusion" is that Michigan recognizes a landlord's lien? The small number of reported decisions that impliedly may touch upon that issue shall be reviewed chronologically.

The first decision is the ancient one— rendered nearly 330 years ago. *Treackle*

*v. Coke*, 1 Vern. 165, 23 Eng. Rep. 389, [1] Eq. Ca. Ab. 47 (1683). In *Treackle*, the lessee assigned a lease to the sublessee who "enjoyed the land [for] six years." *Id.* Is the sublessee liable to the lessor? Under the common law the answer is "no," but based upon *equity Treackle* stated that the answer is "yes." As stated in this short opinion, "for though in strictness of law there is no privity of contract to charge the assignee, yet in equity he is most certainly chargeable for such time, as he received the profits." *Id.* Further, "the *Lord Keeper* said, if there had not been one, he should not have doubted to have made a precedent in this case." *Id.*

*Treackle* does not establish a common law lien. It does not establish an equitable lien. *Treackle* only stands for the proposition that a sublessee may be equitably liable to the lessor to pay rent, even though there is no liability under common law because of absence of privity between those parties.

Approximately seventy-seven years ago, the issue of a possible landlord's lien was again addressed. *S.S. Kresge Co. v. Twelve Seventy–Five Woodward Ave. Corp.*, 270 Mich. 218, 258 N.W. 252 (1935) ("*Kresge*"). William and Anne Feinstein, the lessees, rented premises from S.S. Kresge Co., as lessor. The Feinsteins eventually, after one sublease was cancelled, sublet the premises to the Twelve Seventy–Five Woodward Avenue Corporation ("Woodward") which, in a complicated transaction, agreed to pay S.S. Kresge directly and guaranteed the debt to the prior sublessee. Woodward then orally agreed to sublet the premises to Louis J. Wohl, Inc. ("Wohl"), who occupied the premises. Wohl borrowed $25,000 from Times Square Trust Company ("Times Square") which, after payments were applied, was owed $10,800. Wohl declared bankruptcy in December 1929 and S.S. Kresge termi-

nated the principal lease with Feinstein in February, 1930.

The bankruptcy receiver occupied the premises and owed $15,500 in rent; the rent was held by a designated stakeholder until entitlement to the rent could be determined. Both the lessee and sublessee were insolvent. Who gets the money, S.S. Kresge, as lessor, or Wohl's creditors, including Times Square? The Michigan Supreme Court stated "[t]he question whether a landlord has an *equitable lien on rent* owing by a sublessee in case of insolvency of the lessee is new in this state." *Kresge,* 270 Mich. at 221, 258 N.W. at 253 (emphasis added). Relying upon *Treakle* and *Otis v. Conway,* 114 N.Y. 13, 16, 20 N.E. 628, 629 (1889), the Michigan Supreme Court ruled that unpaid rent should be paid to the landlord and not to the creditors of an insolvent sublessee. An equitable lien in the *rent* exists, notwithstanding lack of privity between the landlord and the sublessee. The lien on rent "is paramount to the claims of the lessee's creditors." *Id.*

In this case, the Landlord is not asserting a lien on rent to be paid by a sublessee. *The Landlord is asserting a general lien on all the personal property of the Debtor.* There is no lessor-lessee-sublessee relationship which gives rise to a sublessee's obligation for unpaid rent. Neither *Treackle* nor *Kresge* give the Landlord a general common law or equitable lien on the Bank's collateral to secure repayment of the unpaid rent owed by this Debtor-lessee to this Landlord. *Treackle* and *Kresge* only address entitlement to rents in a tri-party lessor-lessee-·sublease relationship.

Sixty years ago, a bankruptcy opinion was rendered deciding whether Michigan law gave a landlord a general priority for the payment of rent. *In re Bromel–Knapp Corp.,* 106 F.Supp. 519 (E.D.Mich. 1952). Buhl Land Company ("Buhl"), the bankrupt's landlord, demanded payment of current rent and past due rent. The bankrupt assigned certain accounts receivable to Buhl which were insufficient to pay all rent due. The court addressed the issue of whether the receivables given to Buhl were used for payment of current rent or were applied to past due rent resulting in a preferential transfer. The bankruptcy referee found that the assignment of receivables was used to pay the past due rent.

The landlord argued that the rent was entitled to priority under Michigan law. The Bankruptcy Act gave fifth priority, to be paid in full from the bankruptcy estate, to "rent owing to the landlord who is entitled priority by applicable State law. . . ." Bankruptcy Act of 1898, Section 64(a)(5), 11 U.S.C. § 104(a) (abrogated by Bankruptcy Reform Act of 1978).

In *Bromel–Knapp,* if the landlord held a valid rent priority, the referee's determination that a preference occurred might be overruled. On appeal, and after considering *Kresge* "and the development of the law on the subject," the district court stated "there is no reason to believe that the Michigan [Supreme Court] intended to establish a general priority for rental claims or to give landlords a lien for the payment of rent in every situation." *In re Bromel–Knapp Corp.,* 106 F.Supp. at 521.

This court interprets *Kresge* as did the district court in *Bromel–Knapp. Kresge* dealt with the "special problem" that occurs when land is sublet and the original lessee is insolvent. *Id.* In that situation, the landlord holds an equitable lien on rents from the sublessee—those rents cannot be first used to pay the lessee's creditors. *Id.* The equitable lien was created because, at common law, the landlord was not in privity of contract with the sublessee. *Id.* This court believes it is totally improper to expand the *Kresge* analysis to

judicially create some type of general priority or give a general lien to a landlord to collect unpaid rent. The *Kresge* remedy "was created to solve the problem raised when the lessee was insolvent; [an] equitable lien on rental payments made by the sublessee was given the landlord ... for the period after the lessee's insolvency and to the extent that the lessee had actually defaulted in his payments to the landlord." *Id.*

This Landlord is not entitled to an equitable lien on a sublessee's rental payments because there is no sublessee. Also, there is no rent being held which is subject to competing claims. This court agrees with *Bromel–Knapp.* Under Michigan law, there is no general priority or a lien on a debtor's assets to secure payment of rent.

Fourteen years ago, the Michigan Supreme Court decided *Shurlow v. Bonthuis,* 456 Mich. 730, 576 N.W.2d 159 (1998). The facts in *Shurlow* are fairly complicated and need not be fully restated here.

The lease at issue in *Shurlow* included a provision which expressly granted a consensual landlord's lien on the lessee's personal property to the lessor as collateral to secure payment of the rent. The lessor failed to file a financing statement under Article 9 of the Uniform Commercial Code as adopted in Michigan.

The Michigan Supreme Court was called upon to determine whether a consensual security agreement in a lease was excluded from UCC filing requirements under UCC 9–104(b). Mich. Comp. Laws Ann. § 440.9104. Reviewing various UCC provisions, and analyzing the provisions "in the light of the purpose and policy of the

rule or principle in question," the court ruled that all consensual security interests in personal property, including the consensual landlord's lien in the lease, are covered by the UCC. *Shurlow,* 456 Mich. at 737, 576 N.W.2d at 163.

Preliminarily, before commencing its analysis, the Michigan Supreme Court summarized and generally addressed a "landlord's lien":

> A landlord's lien is the right of a landlord to levy upon the goods of a tenant in satisfaction of unpaid rents or property damage. Although landlords' liens may arise by statute, common law, or contract, commonly these liens take the form of statutory liens that give the lessor the status of a preferred creditor with regard to the lessee's property. It is without dispute that subsection 9104(b) excludes landlords' liens from article 9 coverage.

*Shurlow,* 456 Mich. at 734, 576 N.W.2d at 161.

In making their arguments in *Shurlow,* the plaintiffs argued that Michigan did not recognize statutory or common law landlords' liens; to the contrary, the defendant argued that Michigan recognized a common law landlords' lien in *Kresge. Shurlow,* 456 Mich. at 734, 576 N.W.2d at 162. The court expressly stated "our decision in this case does not require us to determine whether the antiquated remedy" recognized in *Kresge* was viable before (or remained viable after) Michigan adopted the UCC. *Shurlow,* 456 Mich. at 735 n. 6, 576 N.W.2d at 162 n. 6.[2] The Michigan Supreme Court, like all good courts, declined

---

**2.** The Michigan Supreme Court acknowledged that *Kresge* recognized "a form of such a lien." *Shurlow,* 456 Mich. at 735 n. 6, 576 N.W.2d at 162 n. 6. However, the court did not identify or discuss the *form* or *substance* of that lien. Based upon the discussion above, this court determines that the form of the *Kresge* lien is an equitable lien; the substance of the lien permits the landlord to collect unpaid rents from a sublessee with priority over the sublessee's general creditors.

to rule on an issue not necessary for the decision.

In this adversary proceeding, this court is called upon to squarely decide whether Michigan recognizes a general common law landlord's lien on the personal property of its lessee for unpaid rent. This court holds that no such landlord's lien exists. Indeed, the court further holds that no such landlord's lien has ever existed under Michigan law.[3]

As has been required in some other federal court opinions, this court is called upon to predict what the Michigan Supreme Court would decide if presented with this issue. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126 (6th Cir.1995); *see Stryker Corp. v. XL Ins. America Inc.*, 726 F.Supp.2d 754, 764 (W.D.Mich.2010) (Bell, J.), *aff'd in part, rev'd in part on other grounds*, 681 F.3d 806 (6th Cir.2012); *El Camino Resources, LTD. v. Huntington Nat'l Bank*, 722 F.Supp.2d 875, 898 (W.D.Mich.2010) (Neff, J.); *Phillips v. Ingham County*, 371 F.Supp.2d 918, 929 (W.D.Mich.2005) (Enslen, J.); *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 901–02 (Bankr.W.D.Mich. 1996).

As instructed by *Garden City*, this court has examined the "relevant data" including the language in prior Michigan Supreme Court decisions, the ancient *Treakle* case, decisions from other jurisdictions, including the 1889 New York *Otis v. Conway* opinion, and the views of a leading Michigan real estate commentator, *Cameron*, § 20.67. This court has also spent *many* hours to attempt to find *any* authority that even marginally supports the Landlord's

asserted "legitimate conclusion" that a broad common law (or equitable) lien covering a lessee's personalty is recognized in Michigan.

Nothing has been found that supports the Landlord's vacuous assertion. The court believes no authority exists. Further, no statutory landlord's lien has been adopted in Michigan. This court's independent research can be characterized as "chasing an apparition." This judge is very confident that the Michigan Supreme Court would agree that there is no broad landlord's lien in Michigan to secure the repayment of rent, except for the type of a UCC consensual lien addressed in *Shurlow*.

This adversary proceeding does not involve a consensual security interest that is included in a lease. This Landlord, as a matter of law, does not have either a common law lien or an equitable lien on the Debtor's personal property. The Bank is therefore entitled to a judgment on the pleadings.

*C. Possible Imposition of Sanctions For Causing a Waste of Judicial Resources.*

■ A party's attorney is accountable to the court to foster an unimpeded functioning of the litigation process. FED. R. BANKR.P. 9011(a) (herein "Rule 9011") ("Every ... paper ... shall be signed by at least one attorney of record in the attorney's individual name."); Rule 9011(b) ("By presenting to the court ... a petition, pleading, written motion, or other paper, an attorney [certifies] that to the best of the person's knowledge, information, and

---

**3.** This court is not called upon to consider, nor will it decide, whether the *narrow* landlord's equitable lien recognized in *Kresge* regarding unpaid rent in connection with a triparty lessor-lessee-sublessee relationship survives or not. However, the court notes that the existence of any such specific narrow equitable lien on unpaid rents may not matter when a bankruptcy is filed and a trustee exercises avoiding powers. Further, disfavor of "secret liens" is also noted.

belief, formed after an inquiry reasonable under the circumstances, [four types of categories of representations].").

One representation made by Tulip's attorney, and all attorneys, is that "legal contentions ... are warranted by existing law or by a nonfrivolous argument for the ... establishment of new law." Rule 9011(b)(2). This court has spent many hours examining and independently researching Tulip's attorney's assertion that his only "legitimate conclusion" is that a general landlord's lien exists in Michigan. Tulip's attorney's legal assertion and his Rule 9011(b)(2) representation are irrational. Further, there is nothing whatsoever in the papers submitted by the Landlord's attorney to even suggest that this court should take the drastic step and establish a new judicially-created lien.

When an attorney violates Rule 9011, a court may impose sanctions. Rule 9011(c)(2). Sanctions are intended to "deter repetition of [the attorney's] conduct or comparable conduct by others similarly situated." *Id.* When an improper representation pertains to asserted existing law, extension of existing law, or creation of new law, the court may not sanction the party (unless *pro se* ) but *only* the party's attorney. Rule 9011(c)(2)(A).

This makes great sense. Most parties reply upon their attorneys because the parties themselves know little about the technicalities of governing law, rules, or procedures. To hold a represented party personally accountable for an attorney's unwarranted or specious argument would violate the basic construction of the bankruptcy rules. Rule 1001 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding.").

The process to impose sanctions upon an attorney may be commenced by an interested party or by the court on its own initiative. Rule 9011(c)(1). When the sanctions process is instituted by the court, the preferred method is by an order to show cause which identifies the specific conduct that violates the attorney's accountability for his representations. Rule 9011(c)(1)(B). In some instances, monetary sanctions are appropriate. Rule 9011(c)(2)(A) and (B).

What about imposing monetary sanctions as a result of an attorney wasting the court's time? How should the amount of monetary sanctions be determined?

A 1982 study sponsored by the Rand Corporation Institute for Civil Justice concluded that a single hour spent by a federal judge in a tort case costs the government approximately $600.00. This study was discussed in Levin & Colliers, *Containing the Cost of Litigation,* 37 Rutgers L.Rev. 219, 219–22 (1985). In several of his cases, Judge Lee of the United States District Court for the Northern District of Indiana used this formula to impose sanctions under Rule 11 to compensate the government for the waste of judicial resources caused by baseless litigation. *See, e.g., Thiel v. First Federal Savings & Loan Ass'n,* 646 F.Supp. 592, 598 (N.D.Ind.1986) (imposing a sanction of $3,600 based upon $600 per hour). A number of other judges have approved and adopted this calculation. *See, e.g., Dyson v. Sposeep,* 637 F.Supp. 616 (N.D.Ind.1986) (another judge uses $600 per hour formula and states it would also be used in the future); *Advo Sys., Inc. v. Walters,* 110 F.R.D. 426 (E.D.Mich.1986) (noting that the court cannot tolerate an unnecessary drain on judicial resources caused by actions without merit, the court gives notice that in future cases the $600 per hour formula would be used to impose sanctions).

Courts have continued to use this formula, or similar ones, to determine monetary sanctions under Rule 11. For example, in 1991, the United States District Court for the Southern District of Texas imposed Rule 11 sanctions based in part upon 284 hours spent by the court reviewing and ruling on motions at $890 per hour. *Seneca Res. Corp. v. Moody,* 135 B.R. 260 (S.D.Tex.1991). The $890 per hour figure was calculated by a review of an operating report from the district clerk indicating expenses per judge in the district were $1,843,437, and dividing that figure by 2,080 hours per year.[4] *Id.* at 261; *see also Mulkey v. Meridian Oil, Inc.,* 143 F.R.D. 257, 263 (W.D.Okla.1992) (stating that court may impose monetary sanction to account for the court's time expended in dealing with unnecessary matters; the sanction amount was estimated at $600 per hour).

In 1998, Judge Lee of the United States District Court for the Northern District of Indiana noted that the hourly cost of a federal judge had likely inflated to $900 per hour:

> In *Dominguez v. Figel,* 626 F.Supp. 368, 374 (N.D.Ind.1986), this court noted that in 1985, a single hour spent by a federal judge on a case cost the taxpayers $600.00 (citing Levin & Colliers, Containing the Cost of Litigation, 37 Rutg. L.Rev. 219, 227 (1985)). In a 1995 opinion, the court calculated that the hourly cost had increased to $836.00 by 1994. *Active Products Corporation v. A.H. Choitz & Co. Inc.,* 163 F.R.D. 274, 278 n. 5 (N.D.Ind.1995). It is likely that that cost now, adjusted for inflation, is more in the neighborhood of $900.00 per hour.

*Enright v. Auto–Owners Ins. Co.,* 2 F.Supp.2d 1072, 1076 n. 2 (N.D.Ind.1998).

In *Active Products,* Judge Lee based the rise in cost from $600 to $836 per hour upon the increase in cost of living as reflected by the Consumer Price Index. *Active Products Corp.,* 163 F.R.D. at 278 n. 5. As recently as 2007, Judge Hamilton, in the United States District Court for the Southern District of Indiana, acknowledged that Rule 11 sanctions may also take into account the court's time and effort, paid for by the public's taxes, that are wasted by frivolous litigation. *International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers (AFL–CIO), Local 84907 v. Visteon Systems, LLC,* 2007 WL 647499 (S.D.Ind. Feb. 20, 2007) (unpublished opinion). In so noting, Judge Hamilton cited to the *Enright* decision increasing the rate to approximately $900 in 1998.

Utilizing the United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index Inflation Calculator (found at bls.gov/data/inflation_calculator.htm) one finds that the $600 per hour rate in 1982, would be $1,430.58 per hour in 2012. Rounding downward, and based upon current available information coupled with prior reported decisions, this court pegs an hour of its time to be worth $1,400.

The court has decided not to issue an order to show cause to Tulip's attorney for possible imposition of monetary sanctions. To achieve the goal of "effective deterrence," the court hopes a stern warning will suffice. Notice is given to Tulip's attorney: if you make this court chase a legal apparition again, whether in this adversary proceeding or in some future case or adversary proceeding, *bring your checkbook.* The going rate for waste of

**4.** This judge is not aware whether the United States District Court for the Western District of Michigan has issued such a report. This judge knows that this bankruptcy court has not prepared or issued a report.

this court's time will be $1,400 per hour.[5] Rule 9011(c)(2).

### D. *Dismissal of the Trustee's Cross–Claim Against Tulip.*

The Trustee's lien avoidance and recovery causes of action are premised upon Tulip having a valid lien on the remaining sale proceeds. The court has held that Tulip has no valid lien. The Trustee has admitted that the Bank holds a valid lien on the sale proceeds. Indeed, the Trustee's prior motion sought permission to disburse the sale proceeds, less any unpaid applicable surcharge amount, to the Bank.

Based upon the procedural history and the applicable facts and circumstances, and because this court has held that Tulip does not hold a valid lien, the court determines it is appropriate to dismiss the Trustee's causes of action. Rule 7012(c); *cf. Flora v. Home Federal Savings & Loan Ass'n,* 685 F.2d 209, 211–12 (7th Cir.1982) (the trial court did not commit error in granting a sua sponte judgment on pleadings when there was no factual dispute and the court already had resolved the sole legal question in favor of one of the parties).

### V. *CONCLUSION*

The Bank's motion for judgment on the pleadings is GRANTED. Tulip does not hold any valid lien on the proceeds of the Bank's collateral. Tulip's motion for judgment on the pleadings is DENIED. The Trustee's lien avoidance and recovery causes of action are DISMISSED sua sponte by the court because Tulip holds no lien to be avoided.

**5.** This is not the first time Tulip's attorney has wasted this court's time. For example, while this motion in this adversary proceeding was under advisement, the attorney filed an ex parte motion to permit a court officer to enter a debtor's residence without notice or a hear-

A separate judgment will be prepared and entered by the court.

ing. The court scheduled a hearing. At the hearing, the attorney admitted he had no legal authorities to support the requested relief. He just wanted an order. Of course, the court denied the motion.